UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LISA MAE COPELAND, )
)
JASON CARL HAYES, )
)
NORMAN AUGUST STEIBEL, SR., )
)
    Plaintiffs, )
)    Case No.:
v. )
)    **PLAINTIFFS DEMAND**
CITY OF BELLA VILLA, )    **TRIAL BY JURY**
)
CITY OF BYRNES MILL, )
)
EDWARD LOCKE, JR., )
   *in his individual capacity* )
)
   Defendants. )

## COMPLAINT
## CIVIL RIGHTS CASE

Come now Plaintiffs Lisa Mae Copeland, Jason Carl Hayes and Norman August Steibel, Sr., by counsel W. Bevis Schock, and for their Complaint state:

### Introductory Statement – Not Part of Complaint

Defendant Edward Locke, Jr. is the Chief of Police of Bella Villa, Missouri. Additionally, he works "secondary" in Byrnes Mill, Missouri where his father, Edward Locke, Sr., is Chief.

In the summer of 2005 Copeland was driving her van, with three children as passengers, on Highway 30 in Byrnes Mill, Missouri. She was stopped for speeding. Defendant Locke grabbed her by her T-Shirt and pulled her from her car. He threw her to the ground and sat on her astride. He cuffed her and remained sitting her for an extended period of time. He dragged

her for a distance by her midriff. She never resisted or provoked him, although she did ask for a supervisor after he drew his service revolver and pointed it at her Husband. (His offense was coming across the highway to see what was going on. She identified him as he came across). She was charged with speeding, but later, under furtive circumstances, Defendant Locke's father, Byrnes Mill Chief Edward Locke, Sr., tore up the ticket.

In June of 2007 Hayes was stopped in Byrnes Mill at a sobriety checkpoint. Defendant Lock grabbed his arm causing bruises. Defendant Locke then choked him and threw him onto a chair (or pick-up tail gate). Hayes was subject to Defendant Locke's wrath apparently because he had stopped his car for a moment up the hill from the check point. (Hayes was not intoxicated, and in fact passed standard field sobriety tests, but he did change seats with his girlfriend during the stop up the hill from checkpoint. Because it was dark at the time it is a mystery whether or how Defendant Locke or his fellow officers actually could have known Hayes and his girlfriend where switching seats). Hayes was never charged with any offense.

Stiebel owns a business just outside the Bella Villa city limits. Defendant Locke pursued an alleged traffic offender out of the city. Defendant Locke and the traffic offender ended up stopped front of Stiebel's business. Due to the position of Defendant Locke's car in relationship to Stiebel's parking lot, Stiebel's customer was blocked from leaving the business.

Stiebel asked Defendant Locke to move. Defendant Locke wouldn't move, and they argued. Defendant Locke then assaulted Stiebel by pushing him aggressively into the back of a parked van. This caused Stiebel to fall to the ground. Defendant Locke then pushed his knee into Stiebel's back, and cuffed him. Stiebel tried to get up and Defendant Locke pushed him down again. Defendant Locke then tried to pull Stiebel up by the arm, causing bruising. Stiebel left in an ambulance. He was never charged with any offense.

2

In each situation Defendant Locke used excessive and unreasonable force under the circumstances. Hayes and Steibel also assert claims for arrest without probable cause. There was no probable cause in Hayes because Hayes committed no offense by pulling to the side of the road. (Defendant Locke had at most sufficient information for an investigatory stop). There was no probable cause in Steibel first, because absent fresh pursuit Defendant Locke had no jurisdiction outside of Bella Villa, and second, because Steibel had committed no crime whatsoever.

All three Plaintiffs sue Defendant Locke under 42 U.S.C. §1983 for violation of their constitutional rights under the Fourth and Fourteenth Amendments. Plaintiffs also seek compensatory damages, punitive damages, attorney's fees and costs.

Hayes asserts that because Byrnes Mill Chief Locke, Sr. is Edward Locke, Jr.'s father, Byrnes Mill is charged with knowledge of Chief Locke, Jr.'s actions in other pending cases in this court related to Bella Villa.

Copeland and Hayes assert that in their cases Byrnes Mill Chief Edward Locke, Sr. ratified Defendant Locke's behavior, and so Byrnes Mill is liable for Defendant Locke's actions.

Steibel asserts that Defendant Locke, as Chief, is the policy maker for the Defendant City of Bella Villa Police Department. Additionally, Defendant Locke's behavior is consistent with his use of excessive force against other citizens in the course of traffic stops, and so is part of a pattern of behavior. Additionally, to the extent the Bella Villa Mayor and Board of Alderman have all the policy making authority for Bella Villa, they have failed to exercise that policy. Finally, Copeland asserts a failure to respond to complaints. For these reasons Steibel asserts municipal liability.

3

Hayes and Steibel bring state law claims for battery and assault and, in Steibel's case, for unlawful arrest. (For state law claims Copeland is outside the statute of limitations). Plaintiffs respectfully ask the court to take supplemental jurisdiction over these state law claims.

## PRELIMINARY ALLEGATIONS

### Parties

1.      Plaintiff Lisa Mae Copeland is an individual residing in Jefferson County, Missouri.

2.      Plaintiff Jason Carl Hayes is an individual residing in Jefferson County, Missouri.

3.      Plaintiff Norman Stiebel, Sr. is an individual residing in St. Louis County, Missouri.

4.      Defendant Edward Locke, Jr. is an individual who works (a) as a part time police officer in Byrnes Mill in Jefferson County, Missouri and (b) as the Chief of Police in Bella Villa in St. Louis County, Missouri.

5.      Plaintiffs sue Defendant Locke in his individual capacity.

6.      Defendant City of Byrnes Mill is a fourth class municipal corporation, organized and existing pursuant to Missouri law, located in Jefferson County, Missouri.

7.      Defendant City of Bella Villa is a fourth class municipal corporation, organized and existing pursuant to Missouri law, located in St. Louis County, Missouri.

### Jurisdiction

8.      Plaintiffs bring this action pursuant to 42 U.S.C. §1983 and §1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

9.      The court has jurisdiction pursuant to 28 U.S.C. §1343, and 28 U.S.C. §1331.

10.     Plaintiffs pray the court to invoke its supplemental jurisdiction over Plaintiffs' state law claims, pursuant to 28 U.S.C. §1367.

### Venue

4

11.     The events complained of occurred in the Eastern District of Missouri, in the Eastern

        Division.

### Joinder

12.     These cases arise out of a series of related occurrences. Questions of law and fact

        common to all Plaintiffs will arise in the action.[1]

### Color of State Law

13.     At all relevant times Defendant Locke was in uniform and acted under color of law.

14.     Particularly, Defendant Locke acted under color of the laws, statutes, ordinances,

        regulations, policies, customs and usages of the State of Missouri, and its political

        subdivisions.

### Jury Demand

15.     Plaintiffs demand jury trial.

### FACTUAL ALLEGATIONS

### Lisa Mae Copeland

16.     In early summer 2005 Copeland was driving the family van through Byrnes Mill on

        Highway 30.

17.     She had two children on board.

18.     Her then Husband, Michael Copeland, was in a separate car in front of her.

19.     A young officer whose identity is unknown to Copeland pulled her over for allegedly

        speeding.

20.     The highway is divided at that location.

21.     She stopped on the left side of the southwest bound lanes.

---

[1] Fed.R.Civ.P. 20(a).

22.   While she was speaking with the officer her Husband did a U-Turn and drove back on the other side of the road to the location where his wife was stopped.

23.   He parked on the right of his side of the road, that is the northeast bound side.

24.   Her Husband jogged across Highway 30 toward her car.

25.   Defendant Locke pulled out his gun and pointed it at Copeland's Husband.

26.   Copeland screamed "He's my Husband."

27.   Defendant Locke said "I don't care who he is."

28.   Copeland asked to speak to a supervisor.

29.   Defendant Locke opened Copeland's car door in an aggressive manner.

30.   Defendant Locke grabbed Copeland by her T-shirt.

31.   Defendant Locke pulled Copeland from the car.

32.   Defendant Locke spun Copeland around.

33.   Defendant Locke threw Copeland to the ground face down.

34.   Defendant Locke picked Copeland back up and banged her back on the ground more than one time.

35.   Copeland squirmed with discomfort.

36.   Defendant Locke grabbed Copeland's hands and handcuffed her.

37.   Defendant Locke sat on top of her astride, and started laughing.

38.   At one point Defendant Locke's knee pressed into Copeland's back.

39.   Defendant Locke remained astride Copeland for an extended period of time.

40.   Defendant Locke dragged Copeland on the ground a short distance by her midriff.

41.   Copeland suffered bruises and pain.

42.   Copeland was crying hysterically and hyperventilating.

43. Defendant Locke allowed Copeland to switch to a sitting position.

44. Copeland saw another patrol car arrive at the scene, which she knew from prior experience in Byrnes Mill to be the Chief's car.

45. The Chief of the Byrnes Mill Police Department is Edward Locke, Sr.

46. Edward Locke, Sr. is Defendant Locke's father.

47. Edward Locke, Sr. walked to Copeland's location.

48. Copeland said that Defendant Locke had assaulted her.

49. Edward Locke, Sr. stated that since she had accused his officer of misconduct the police could charge her with five felonies and take her to jail.

50. Edward Locke, Sr., then walked to Copeland's Husband.

51. Copeland's Husband confirmed to Edward Locke, Sr. that Defendant Locke was "out of control."

52. Copeland received a traffic ticket.

53. Edward Locke, Sr. released Copeland and allowed her, her husband and the children to leave.

54. As they left Edward Locke, Sr. told Copeland's Husband to come to see him about the speeding ticket.

55. Two weeks later Edward Locke, Sr., met with Copeland and her Husband in a secluded location near the police station.

56. Edward Locke, Sr. tore up Copeland's ticket.

57. On information and belief Edward Locke, Sr. made arrangements with the city authorities for the ticket to be dropped.

58. During the furtive meeting Edward Locke, Sr. told Copeland and her Husband that if they ever had future problems with the police in Byrnes Mill that they were to have the officer call him from the scene.

59. Copeland's Husband has taken advantage of this offer on more than one occasion since that time.

### Jason Carl Hayes

60. On June 23, 2007 Jason Hayes went to a movie with his girlfriend, Carol Jesson.

61. Hayes had two beers at the movie.

62. After the movie Hayes and Ms. Jesson drove westbound on Highway 30 toward their home.

63. Just after passing the intersection of Hwy 30 and Carol Park Road, Hayes saw a sobriety checkpoint down a long hill from where they were then driving.

64. The checkpoint was at the intersection of Hwy 30 and Old Gravois to the north and Gravois to the south.

65. At the location where he saw the checkpoint Hayes had not yet entered the city limits of Byrnes Mill.

66. Before reaching Byrnes Mill he pulled over and switched seats with his girlfriend.

67. Jesson then drove the car down the hill to the checkpoint.

68. At the checkpoint Defendant Locke walked to the passenger side of the car.

69. Defendant Locke asserted that an officer up the road had seen him change seats with Jesson.

70. (It was dark and the car dome light had not been turned on during the driver switch).

71. Defendant Locke demanded that Hayes exit the car.

8

72.   Hayes exited his car.

73.   Defendant Locke grabbed Hayes very tightly by the right arm.

74.   Hayes at that point was not free to leave.

75.   Continuing to hold Hayes' arm, Defendant Locke began walking Hayes to the checkpoint.

76.   Hayes asked Defendant Locke to loosen his grip.

77.   In response Defendant Locke aggressively tightened his grip.

78.   The original grip and the subsequent tightening of the grip caused pain and bruises.

79.   Then Defendant Locke reached his right hand around Hayes' neck and choked him.

80.   Hayes could not breath and became lightheaded.

81.   Defendant Locke then threw Hayes onto either a chair or the tail gate of a pick-up truck.

82.   When thrown Hayes suffered

    a.   Additional bruising, and

    b.   Pain.

83.   Defendant Locke gave Hayes the standard field sobriety tests.

84.   Hayes passed all the standard field sobriety tests.

85.   Byrnes Mill Chief Edward Locke, Sr. walked over.

86.   Edward Locke, Sr. said that because Hayes was a good citizen and he had never seen him before, he would let him go.

87.   Hayes left.

### Norman Steibel

88.   Norman Steibel is 67 years old.

89.  Due to health problems with his joints he is physically handicapped and has great trouble walking.

90.  Anyone seeing him walk even one or two steps would know of his handicap.

91.  Steibel has owned a business called Custom Metal Works, Inc. for over 43 years.

92.  For approximately 40 years the business has been located at 3700 Bayless at the southwest corner of Pardella and Bayless in St. Louis County.

93.  That location is just outside of and to the east of the Bella Villa city limits.

94.  The business's parking lot exits onto Pardella.

95.  On information and belief in the late afternoon of October 18, 2007 Defendant Locke was working traffic on eastbound Bayless.

96.  On information and belief Defendant Locke began pursuing a driver for a traffic violation.

97.  The subject turned from eastbound Bayless onto southbound Pardella.

98.  On information and belief the subject made that turn to get out of the traffic on Bayless.

99.  The subject and Defendant Locke stopped in front of Steibel's business.

100. Defendant Locke's car blocked one of Steibel's customers from exiting Steibel's parking lot and onto the street.

101. The customer was ready to leave.

102. On prior occasions Defendant Locke and his officers had blocked Steibel's business's exit to the street, and Defendant Locke and/or the officers and Steibel had argued about it.

103. On that October 18, 2007 Steibel walked out of his business and up to Defendant Locke.

104. Steibel politely asked Defendant Locke to move his car so the customer could leave.

105.   Defendant Locke said he would move the car when he was finished.

106.   Steibel again requested Defendant Locke to move the car.

107.   Defendant Locke said Steibel was interfering with police business.

108.   Steibel said Defendant Locke was interfering with his business.

109.   Steibel said: "Move the f-ing car."

110.   Defendant Locke reacted to the obscenity by aggressively pushing Steibel backward into

a van.[2]

111.   Steibel raised his arm to defend himself.

112.   Steibel's legs, particularly his right knee, gave out and he collapsed to the ground.

113.   Defendant Locke drove his knee into Steibel's back.

114.   Defendant Locke handcuffed Steibel.

115.   Steibel never resisted arrest.

116.   Defendant Locke kept shouting to Steibel to "quit resisting".

117.   At one point Steibel tried to get up.

118.   Defendant Locke again drove him to the ground.

119.   Defendant Locke tried to lift Steibel up by his arm, causing bruising.

120.   Steibel suffered bruises, bleeding, pain and scrapes.

121.   Steibel left in an ambulance.

122.   A police officer followed the ambulance.

---

[2] *Buffkins v. City of Omaha*, 922 F.2d 465, 472 (8th Cir. 1990). "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers...· The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."

123. At the hospital an officer of the Bella Villa police department stayed with Steibel at all times.

124. That officer stated to many hospital personnel that Steibel was "his prisoner".

125. Defendant Locke eventually came to the hospital and released Steibel from custody.

126. Defendant Locke did not charge Steibel with any offense.

### Damages – Suffering

127. During the events described herein each Plaintiff endured (in addition to the specific injuries described above):

    a. Pain,

    b. Bruising,

    c. Humiliation,

    d. Mental suffering,

    e. Indignity,

    f. Disgrace,

    g. Stress, and

    h. Fear.

128. Additionally, during the week after his incident Hayes felt pain while performing his job as a carpet clearer.

### Causation

129. Defendant Locke's actions caused the damages each Plaintiff suffered.

———

### FEDERAL CLAIMS

### COUNT I

**Violation of Civil Rights, 42 U.S.C. §1983, Fourth and Fourteenth Amendments
Separate Claims by all Plaintiffs Against Defendant Locke
Compensatory Damages, Punitive Damages and Attorney's Fees**

130.   Plaintiffs incorporate all prior paragraphs.

131.   The Fourth Amendment right to be free from unreasonable and excessive force under the circumstances is clearly established.[3][4][5]

132.   The right to be free of arrest without probable cause is clearly established.[6]

133.   The right to be free of arrest without probable cause depends on the totality of the facts and circumstances within [the officers'] knowledge and of which he had reasonably trustworthy information sufficient to warrant a prudent man in believing that the subject had committed or was committing an offense.[7]

134.   In some cases no use of force is permitted at all because none is required.[8]

**Lisa Mae Copeland
Force Objectively Unreasonable**

135.   At the instant Defendant Locke grabbed Copeland's T-shirt Copeland was seized, and so her Fourth Amendment rights were fully implicated.[9]

136.   At that moment Copeland:

    a.   Had not committed a serious crime,

    b.   Presented no threat to the safety of the officers or others,

    c.   Was not actively resisting arrest,

---

[3] *Graham v. Connor*, 490 U.S. 386, 394-96 (1989).
[4] Regarding 20/20 hindsight see Eighth Circuit Model Jury Instruction (Civil) 4.10., *Rahn v. Hawkins*, 2006 WL 2707643 (8th Cir. 2006).
[5] *McGruder v. Heagwood*. 197 F.3d. 918, 919 (8th Cir. 1999).
[6] *Warren v. City of Lincoln, Neb.*, 864 F.2d 1436, 1440 (8th Cir. 1989)
[7] *Id.*, and *Michigan v. DeFillipo*, 443 U.S. 31 (1970).
[8] *Brauer v. Norris*, 713 F.2d 408 (8th Cir. 1983).
[9] *California v. Hodari D.*, 499 U.S. 621, 626 (1991).

     d.     Was not attempting to evade arrest by flight,[10] and

     e.     Was not in the midst of a boisterous situation.[11]

137.   Defendant Locke's use of force against Copeland was excessive and objectively

unreasonable under the circumstances.

138.   Defendant Locke's use of force against Copeland was therefore in violation of

Copeland's rights protected by the Fourth Amendment to the United States Constitution.

### Jason Carl Hayes
### Force Objectively Unreasonable
### Unlawful Arrest

139.   When Defendant Locke grabbed Hayes' arm Hayes was seized, and so his Fourth

Amendment rights were fully implicated.[12]

140.   At that moment Hayes:

     a.     Had not committed a serious crime,

     b.     Presented no threat to the safety of the officers or others,

     c.     Was not actively resisting arrest,

     d.     Was not attempting to evade arrest by flight,[13] and

     e.     Was not in the midst of a boisterous situation.[14]

141.   Defendant Locke's use of force against Hayes was excessive and objectively

unreasonable under the circumstances.

---

[10] *Wertish v. Krueger*, 433 F.3d. 1062 1066 (8th Cir. 2006), *Kukla v. Hulm*, 310 F.3d. 1046, 1050 (8th Cir. 2002), and *Guite v. Write*, 147 F.3d. 747, 750, (8th Cir.1998).
[11] *Darrah v. City of Oak Park*, 255 F.3d. 301 (6th Cir. 2001).
[12] *California v. Hodari D.*, 499 U.S. 621, 626 (1991).
[13] *Wertish v. Krueger*, 433 F.3d. 1062 1066 (8th Cir. 2006), *Kukla v. Hulm*, 310 F.3d. 1046, 1050 (8th Cir. 2002), and *Guite v. Write*, 147 F.3d. 747, 750, (8th Cir.1998).
[14] *Darrah v. City of Oak Park*, 255 F.3d. 301 (6th Cir. 2001).

142.    Defendant Locke's use of force against Hayes was therefore in violation of Hayes' rights

protected by the Fourth Amendment to the United States Constitution.

143.    At the time of Defendant Locke' arrest of Hayes:

    a.    Hayes was committing no crime whatsoever,

    b.    Defendant Locke had no probable cause whatsoever to believe Hayes was

        committing a crime.

144.    There was no probable cause for Defendant Locke's arrest of Hayes.

145.    Defendant Locke's arrest of Hayes was therefore in violation of Hayes' rights protected

by the Fourth Amendment to the United States Constitution.

**Norman Steibel**
**Force Objectively Unreasonable**
**Unlawful Arrest**

146.    When Defendant Locke pushed Steibel into the van he "layed hands" on Steibel and so a

"seizure" occurred and so Steibel's Fourth Amendment rights were fully implicated.[15]

147.    At that moment Steibel:

    a.    Had not committed any crime whatsoever,

    b.    Presented no threat to the safety of the officer or others,

    c.    Was not actively resisting arrest, and

    d.    Was not attempting to evade arrest by flight,[16] and

    e.    Was not in the midst of a boisterous situation.[17]

---

[15] *California v. Hodari D.*, 499 U.S. 621, 626 (1991).
[16] *Wertish v. Krueger*, 433 F.3d. 1062 1066 (8th Cir. 2006), *Kukla v. Hulm*, 310 F.3d. 1046,
1050 (8th Cir. 2002), and *Guite v. Write*, 147 F.3d. 747, 750 (8th Cir.1998).
[17] *Darrah v. City of Oak Park*, 255 F.3d. 301 (6th Cir. 2001).

148. Defendant Locke's use of force against Steibel was excessive and objectively unreasonable under the circumstances.

149. No force whatsoever was called for.

150. Defendant Locke's use of force against Hayes was therefore in violation of his rights protected by the Fourth Amendment to the United States Constitution.

151. Defendant Locke has no jurisdiction outside of Bella Villa, unless in fresh pursuit from that jurisdiction.[18]

152. The entire set of circumstances related to Steibel occurred outside of Bella Villa.

153. Defendant Locke had no lawful authority to arrest Steibel.

154. At the time of Defendant Locke's arrest of Steibel Defendant Locke had no probable cause whatsoever to believe Steibel was committing a crime.

155. The discussion of Chief Locke moving his vehicle, even if accompanied by an obscenity, did not produce probable cause for an arrest.[19]

156. Defendant Locke's arrest of Steibel was therefore in violation of Steibel's rights protected by the Fourth Amendment to the United States Constitution.

### Compensatory Damages

157. Under 42 U.S.C. 1983 each Plaintiff is entitled to an award of compensatory damages against Defendant Locke in his individual capacity.

### Punitive Damages

158. Defendant Locke's actions against each Plaintiff were:

    a.    Reckless, and

---

[18] **RSMo. 544.157.1, .3,** *State v. Renfrow,* **224 S.W.3d 27, 31 -32 (Mo.App. 2007).**
[19] *Spiller v. City of Texas City Police Department,* **130 F.3d. 162, 165 (5th Cir. 1997),** and see *Lewis v. New Orleans,* **415 U.S. 130, 135 (1974)** regarding expected restraint of police officers.

16

b.     Showed callous indifference toward the rights of each Plaintiff, and

c.     Taken in the face of a perceived risk that they would violate federal law.

159.   Each Plaintiff is entitled to an award of punitive damages against Defendant Locke, in his

individual capacity, in order to punish him and to deter others.

### Attorney's Fees

160.   Under 42 U.S.C. §1988 if Plaintiffs are the prevailing parties in this litigation then they

will be entitled to receive an award from Defendant Locke of reasonable attorney's fees,

non-taxable expenses, and costs.

### Prayer

WHEREFORE, Plaintiffs pray for judgment under 42 U.S.C. 1983 and 1988 against

Defendant Locke in his individual capacity for compensatory damages in a fair and reasonable

amount, for punitive damages, for reasonable attorney's fees and non-taxable expenses, for costs,

and for such other relief as the court finds to be just, meet and reasonable.

### COUNT II
### Violation of Civil Rights, 42 U.S.C. §1983, Fourth and Fourteenth Amendments
### Copeland and Hayes Against City of Byrnes Mill
### Compensatory Damages and Attorney Fees

161.   Plaintiffs incorporate all prior paragraphs.

### 1st Alternative Basis of Municipal Liability - Hayes and Copeland, Ratification

162.   As Copeland's and Hayes' first alternate basis for liability against Defendant City of

Byrnes Mill, Byrnes Mill Chief Edward Locke, Sr.'s tearing up of Copeland's ticket and

offer of immunity to her and her Husband in Byrnes Mill after his son, Defendant Locke,

had assaulted Copeland and violated her civil rights constituted ratification of Defendant

Locke's actions in that situation.

17

163.   The City of Byrnes Mill therefore has municipal liability for the Copeland situation.[20]

164.   The ratification in the Copeland case emboldened Defendant Locke and led therefore to Defendant Locke's subsequent violation of Hayes' civil rights.

165.   The City of Byrnes Mill therefore has municipal liability for the Hayes situation.[21]

**2nd Alternative Basis of Municipal Liability  -  Hayes, Failure to Train, Supervise, Control**

166.   As Hayes' second alternate basis for liability against Defendant City of Byrnes Mill, Defendant City failed to properly train, supervise, control and/or discipline Defendant Locke.  Defendant City of Byrnes Mill was thus deliberately indifferent to the rights of others in adopting its training practices, and in failing to supervise, control and/or discipline Defendant Locke, such that those failures reflected a deliberate or conscious choice by Defendant City of Byrnes Mill.[22]

167.   Continuing to employ Defendant Locke in light of (a) the Copeland matter, and (b) other pending matters against him in Bella Villa is evidence of failure to train, supervise, discipline and control Defendant Locke when on notice of his substantial prior problems.

168.   Because Defendant Locke is Byrnes Mill Chief Edward Locke, Sr.'s son, Byrnes Mill had constructive knowledge of the legal problems which Defendant Locke had in Bella Villa at the time of the Hayes incident.

169.   These deficiencies caused Hayes' damages.[23]

---

[20] *Dixon v. Lowery*, 302 F.3d 857, 867 (8th Cir. 2002).
[21] *Id.*
[22] *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).
[23] *Larson By Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir.1996).

170.    These failures by Defendant City of Byrnes Mill to train, supervise, control and/or discipline Defendant Locke subjects Defendant City of Byrnes Mill to liability for the constitutional violations committed by Defendant Locke against Hayes.

**3rd Alternative Basis of Municipal Liability  -  Hayes Against Byrnes Mill**

171.    The conduct of Defendant Locke against Hayes was part of a pattern of transgressions.

172.    Defendant City of Byrnes Mill is therefore liable for the constitutional violations committed by Defendant Locke against Hayes.[24]

### Compensatory Damages

173.    Under 42 U.S.C. §1983 Plaintiffs Copeland and Hayes are each entitled to awards of compensatory damages against Defendant City of Byrnes Mill.

### Attorney's Fees

174.    Under 42 U.S.C. §1988 if Plaintiffs Copeland and Hayes are the prevailing parties in this litigation then each will be entitled to receive an award from Defendant City of Byrnes Mill of reasonable attorney's fees, non-taxable expenses, and costs.

### Prayer

WHEREFORE, Plaintiffs Copeland and Hayes pray for judgment under 42 U.S.C. 1983 and 1988 against Defendant City of Byrnes Mill for compensatory damages in a fair and reasonable amount, for reasonable attorney's fees and non-taxable expenses, for costs, and for such other relief as the court finds to be just, meet and reasonable.

### COUNT III
**Violation of Civil Rights, 42 U.S.C. §1983, Fourth and Fourteenth Amendments
Steibel Against City of Bella Villa
Compensatory Damages and Attorney Fees**

---

[24] *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).

175.    Plaintiffs incorporate all prior paragraphs.

**1st Alternative Basis of Municipal Liability - Steibel, Chief Locke as Policy Maker**

176.    As Steibel's first alternate basis for liability against Defendant City of Bella Villa, at the

time of these events Defendant Locke was the:

a.      Chief of Police for Defendant City of Bella Villa and/or,

b.      Chief policymaker for Defendant City in matters concerning law enforcement,

and/or

c.      Was at least making some policies up "in his head".

177.    The acts and incidents described herein by the chief policy maker for the police

department of Defendant City of Bella Villa may fairly be said to be those of the

municipality.[25]

178.    Those acts therefore subject Defendant City of Bella Villa to liability for the

constitutional violations committed by Defendant Locke.[26]

**2nd Alternative Basis of Municipal Liability - Steibel, Delegation to Defendant Locke**

179.    As Steibel's second alternate basis for liability against Defendant City of Bella Villa, the

policy makers for Defendant City of Bella Villa are the Mayor and the Board of

Alderman, and that body and/or that individual delegated full authority and/or

empowered Defendant Locke to make policy for the Defendant City of Bella Villa Police

Department.

180.    Particularly, Defendant Locke made up policies "in his head."

---

[25] *Board of County Com'rs of Bryan County, Okl. v. Brown* , 520 U.S. 397, 404 (1997)
[26] *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986).

181.   That delegation of authority by the actual policy maker(s) for the Defendant City of Bella

       Villa placed Defendant Locke in a policy making position, and the acts of Defendant

       Locke may fairly be said to be those of the municipality.[27]

182.   Alternatively, the City failed to actually exercise its authority to make policy, and failure

       to make policy is itself a policy causing municipal liability.[28]

183.   Those acts therefore subject Defendant City of Bella Villa to liability for the

       constitutional violations committed by Defendant Locke.[29]

**3rd Alternative Basis of Municipal Liability  -  Steibel, Failure to Train, Supervise, Control**

184.   As Steibel's third alternate basis for liability against Defendant City of Bella Villa,

       Defendant City of Bella Villa failed to properly train, supervise, control and/or discipline

       Defendant Locke.

185.   The City of Bella Villa has never evaluated Defendant Locke's performance.

186.   The City of Bella Villa has never supervised Defendant Locke in a meaningful way.

187.   The City of Bella Villa has no job description for Defendant Locke.

188.   The City of Bella Villa has never disciplined Defendant Locke for any of the conduct of

       which it knew due to prior complaints and due to pending lawsuits.

189.   Defendant City of Bella Villa was thus deliberately indifferent to the rights of others in

       adopting its training practices, and in failing to supervise, control and/or discipline

---

[27] *Board of County Com'rs of Bryan County, Okl. v. Brown* , 520 U.S. 397, 404 (1997)
[28] *Timberlake by Timberlake v. Benton*, 786 F.Supp. 676, 696 (M.D.Tenn. 1992), and cases cited therein.
[29] *Id. at* **483,** *and see Kujawski v. Board of Com'rs of Bartholomew County, Ind.,* **183 F.3d 734, 737 (7th Cir. 1999).**

Defendant Locke, such that those failures reflected a deliberate or conscious choice by

Defendant City of Bella Villa.[30]

190.    Those deficiencies caused Steibel's damages.[31]

191.    In light of the fact that it was the Chief of Police himself who engaged in the

constitutional violations, the need to correct the deficiencies is so obvious, and the

inadequacy so likely to result in the violation of constitutional rights, that the

policymakers of the city can reasonably be said to have been deliberately indifferent to

the need.[32]

192.    If Defendant City of Bella Villa had properly trained, supervised, controlled and/or

disciplined Defendant Locke, the constitutional violations committed by Defendant

Locke would not have occurred.

193.    These failures by Defendant City of Bella Villa to train, supervise, control and/or

discipline Defendant Locke subject Defendant City of Bella Villa to liability for the

constitutional violations committed by Defendant Locke.

**4th Alternative Basis of Municipal Liability  -  Steibel, Pattern of Transgressions**

194.    As Steibel's fourth alternate basis for liability against Defendant City of Bella Villa, the

acts of Defendant Locke were part of a pattern of transgressions by Defendant Locke and

its other officers of which Defendant City of Bella Villa knew or should have known.

The failure of Defendant City of Bella Villa to act proactively to prevent such a pattern

of transgressions, and particularly to prevent the constitutional violations outlined herein,

---

[30] *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).
[31] *Larson By Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir.1996).
[32] *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996), *citing Thelma D. v. Board of Educ.*, 934 F.2d 929, 934 (8th Cir.1991)

establishes the policy of Defendant City of Bella Villa to condone or otherwise tolerate such constitutional violations.

195. Five other claims are now pending in this court and the Eighth Circuit, including:

| | |
|---|---|
| Schmidt v. Bella Villa, | 4:06-CV-00265SNL, |
| On appeal to the Eighth Circuit | 07-0353 |
| Cook v. Bella Villa | 4:06-CV-01531SNL |
| Cavataio v. Bella Villa | 4:06-CV-01630SNL |
| Tunell v. Bella Villa | 4:07-CV-00077SNL |
| Scherrer v. Bella Villa | 4:07-CV-00306SNL |

196. Other citizen complaints have been filed before this event.

197. Defendant City of Bella Villa had a "policy or custom" of failing to act upon prior similar complaints of unconstitutional conduct, of which they knew or should have known, which caused the constitutional injuries at issue. There was a prior pattern of unconstitutional conduct so "persistent and widespread" as to have the effect and force of law.[33]

198. Defendant City of Bella Villa's failure amounted to deliberate indifference to the rights of persons with whom Defendant Locke came in contact, particularly including Plaintiffs.

199. Those failures by Defendant City of Bella Villa to act proactively to prevent these constitutional violations subjects Defendant City of Bella Villa to liability for the constitutional violations committed by Defendant Locke.

## Compensatory Damages

200. Under 42 U.S.C. §1983 Plaintiff Steibel is entitled to an award of compensatory damages against Defendant City of Bella Villa.

---

[33] *Andrews v. Fowler*, 98 F.3d 1069, 1074 -1075 (8th Cir. 1996), *citing Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).

## Attorney's Fees

201.   Under 42 U.S.C. §1988 if Plaintiff Steibel is the prevailing party in this litigation then he

will be entitled to receive an award from Defendant City of Bella Villa of reasonable

attorney's fees, non-taxable expenses, and costs.

## Prayer

WHEREFORE, Plaintiff Steibel prays for judgment under 42 U.S.C. 1983 and 1988

against Defendant City of Bella Villa for compensatory damages in a fair and reasonable

amount, for reasonable attorney's fees and non-taxable expenses, for costs, and for such other

relief as the court finds to be just, meet and reasonable.

## COUNT IV
### Violation of Civil Rights, 42 U.S.C. §1983, *Respondeat Superior*
### All Plaintiffs Against Defendant Cities
### Compensatory Damages and Attorney Fees

202.   Plaintiffs incorporate all prior paragraphs.

203.   At all relevant times Defendant Locke was:

a.      Depending on the Plaintiff by context serving as an employee of Defendant City

of Bella Villa or Defendant City of Byrnes Mill,

b.      Engaging in a government function, and

c.      Acting within the scope and course of that employment.

204.   Defendant Cities are liable under a theory of *respondeat superior*.[34]

205.   The actions of Defendant Locke caused Plaintiffs to suffer the damages outlined herein.

## Compensatory Damages

206.   Under 42 U.S.C. §1983:

---

[34] Plaintiff makes this claim based on the dissent of Justice Breyer in the 5-4 decision in *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 416, (U.S. 1997).

    a.       Plaintiffs Copeland and Hayes are entitled to an award of compensatory damages against Defendant City of Byrnes Mill, and

    b.       Plaintiff Steibel is entitled to an award of compensatory damages against Defendant City of Bella Villa.

### Attorney's Fees

207.    Under 42 U.S.C. §1988 if Plaintiffs are the prevailing party in this litigation then they will be entitled to receive an award from Defendant Cities of reasonable attorney's fees, non-taxable expenses, and costs.

### Prayer

WHEREFORE, Plaintiffs pray for judgment under 42 U.S.C. 1983 and 1988 against Defendant Cities for compensatory damages in a fair and reasonable amount, for reasonable attorney's fees and non-taxable expenses, for costs, and Plaintiffs pray for such other relief as the court finds to be just, meet and reasonable.

### SUPPLEMENTAL STATE CLAIMS

### COUNT V
### Assault and Battery and False Arrest
### Hayes and Steibel against Defendant Locke
### For Compensatory Damages and Punitive Damages

208.    Plaintiffs incorporate all prior paragraphs.

209.    Defendant Locke committed separate acts of assault and battery against Hayes and Steibel[35].

210.    Those actions by Defendant Locke were unlawful and unjustified.

---

[35] *Geiger v. Bowersox*, **974 S.W.2d 513, 516 (Mo.App.1998).**

211.    Defendant Locke had the apparent present ability to injure Hayes and Steibel and to complete the acts of assault and battery.

212.    Hayes and Steibel sustained damages as a result of the acts of assault and battery.[36]

213.    Hayes and Steibel are each entitled to compensatory and punitive damages for assault and battery against Defendant Locke.

214.    Defendant Locke instigated, caused and/or procured the arrest and imprisonment of Hayes and Steibel.

215.    Defendant Locke's imprisonment of Hayes and Steibel was against the will of each.

216.    Defendant Locke's imprisonment of Hayes and Steibel was unlawful.[37]

217.    Defendant Locke undertook the described conduct against Hayes and Stiebel with malice in that he:

   a.    Wantonly did that which a man of reasonable intelligence would have known to be contrary to his duty,

   b.    Intended his acts to be prejudicial or injurious,

   c.    Acted for a wicked purpose, needlessly, and with a reckless indifference to the rights of others. [38]

218.    Defendant Locke's acts were undertaken in bad faith in that they were undertaken with a dishonest purpose, with moral obliquity, and with conscious wrongdoing.[39]

**Prayer**

---

[36] *Hall v. Martindale*, 166 S.W.2d 594 (Mo.App.1942).
[37] *Ivy v. Wal-Mart*, 777 S.W.2d 682, 683-84 (Mo App. 1989)
[38] *Blue v. Harrah's*, 170 S.W.3d 466, 479 (Mo.App. 2005)
[39] *Id.*

WHEREFORE, Plaintiffs Hayes and Steibel pray for judgment for assault and battery, and for false arrest, all against Defendant Locke in his individual capacity, for compensatory damages in a fair and reasonable amount, for punitive damages and for costs, and for such other relief as the court finds to be just, meet and reasonable.

Date:  December 21, 2007

Respectfully Submitted,

W. Bevis Schock, MBE# 32551, FedARN# 15278
Attorney for Plaintiff
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:    314-721-1698
Voice: 314-726-2322