UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JASON CARL HAYES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:07CV2089SNLJ |
| | ) |
| CITY OF BYRNES MILL, CITY OF | ) |
| BELLA VILLA, and | ) |
| EDWARD LOCKE, JR., in his personal | ) |
| capacity, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

Plaintiff has filed this §1983 action alleging that his Fourth and Fourteenth Amendment rights were violated when allegedly excessive force was used during a vehicle stop at a sobriety checkpoint. Plaintiff asserts that excessive force was used to effectuate an unlawful arrest of the plaintiff. Plaintiff also asserts state law claims for assault & battery, as well as false arrest. Finally, plaintiff asserts a §1983 claim for municipal liability against defendant City of Byrnes Mill[1], and a claim for *respondeat superior* against defendant City of Byrnes Mill and/or City of Bella Villa.[2] This matter is before the Court on the defendants City of Byrnes Mill and Locke,

---

[1]Recently, plaintiff Hayes sought to dismiss his claim of municipal liability against defendant City of Byrnes Mill. *See*, Document [88], filed February 6, 2010. The Court granted the plaintiff's motion to dismiss defendant City of Byrnes Mill. Court Order [89], filed February 8, 2010.

[2]The original complaint has three (3) different plaintiffs, each with a different "incident" giving rise to their particular cause of action. On or about February 7, 2008 this Court granted the defendants' motion to sever [9]. *See*, Court Order [14]. Plaintiff Hayes' claims are contained in Count I (unlawful arrest and excessive force); Count II (municipal liability against defendant City of Byrnes Mill); Count IV (*respondeat superior*); and Count V (state law claims for assault

Jr.'s motion for summary judgment [78], filed December 3, 2009.³ Responsive pleadings have now all been filed and the matter is ripe for disposition. This cause of action is set for trial on the Court's trial docket of April 21, 2010.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a

---

& battery, and false arrest).

³It is unclear as to whether defendant City of Bella Villa is still a defendant since the claim for *respondeat superior* does not distinguish between the two (2) municipalities as defendant Locke's employer. However, this confusion is rendered moot by the Court's ultimate resolution of Count IV.

verdict for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts.  Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983).  The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party."  Hindman v. Transkrit Corp., 145 F.3d. 986, 990 (8th Cir. 1998)(citations omitted); *see*, Mayer v. Nextel West Corp., 318 F.3d. 803, 806 (8th Cir. 2003) *citing* Keathley v. Ameritech Corp., 187 F.3d. 915, 919 (8th Cir. 1999).  However, it is clear that to survive summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy.  Putnam v. Unity Health Systems, Inc., 348 F.3d. 732, 733-34 (8th Cir. 2003) *quoting* Wilson v. Int'l Bus. Mach. Corp., 62 F.3d. 237, 241 (8th Cir. 1995); Girten v. McRentals, Inc., 337 F.3d. 979, 982 (8th Cir. 2003)(plaintiff's theory of age discrimination failed "[b]ecause this theory is supported more by contentions and speculation than evidence, it is insufficient to withstand summary judgment.").  Thus, the nonmoving party cannot rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson, 477 U.S. at 256; Krenik v. County of Le Sueur, 47 F.3d. 953, 957 (8th Cir. 1995).

A significant preliminary matter must be addressed prior to the Court's ultimate review and determination of the pending summary judgment motion.  In the first four (4) pages of the

plaintiff's response to the instant summary judgment motion, plaintiff's counsel takes it upon himself to interject his personal opinion of the history of the adjudication of several prior lawsuits filed by plaintiff's counsel on behalf of other individuals. Plaintiff's counsel makes it abundantly clear that he believes that the courts have wrongly held in favor of the defendants in each of these prior cases. He then proceeds to accuse the courts of ignoring the "truthful" testimony of his clients "about the details of the violent and sexually predatory acts committed by the officers of these jurisdictions **[presumably this is a reference to the City of Bella Villa and the City of Byrnes Mill since these are the only two jurisdictions against which he continuously files lawsuits].**" He further states that "[T]hese officers are men who respond with violence to the slightest questioning of their authority." Finally, counsel states "[T]here is, of course, always the risk that one day instead of just beating people up these officers will shoot a human being. To state the obvious, that would be a bad outcome." Counsel ends this diatribe with a challenge to this Court to show plaintiff Hayes and his fellow plaintiffs "the respect they deserve by holding Defendants' feet to the fire, and thus requiring Defendants to comply with the rules of civil procedure." Plaintiff's response [83], pgs. 1-4.

None of the above-referenced material is close to being a proper response to a summary judgment motion. There is absolutely no indication in this lawsuit that the defendants or their counsel have not complied with the Federal Rules of Civil Procedure, and blatant unsubstantiated assertions to the contrary will not be tolerated. For purposes of the adjudication of the pending summary judgment motion, the Court will strike, *sua sponte,* the inflammatory remarks by plaintiff's counsel as contained in the section of plaintiff's response titled "Introductory Statement: Make Defendants Follow the Rules", pgs. 1-4 of Document [83].

The Court makes the following findings of fact relevant to the case before the Court and the issues raised in the instant summary judgment motion.[4] Prior to June 2007, Police Officer Randall Martin of the Byrnes Mill Police Department requested approval of a sobriety checkpoint within the city limits of Byrnes Mill. During the relevant time-period, Edward Locke, Sr. was the Chief of Police of the Byrnes Mill Police Department. Chief Locke approved a sobriety checkpoint to be activated on June 23, 2007 within the municipality of Byrnes Mill at Highway 30 and Gravois. Affidavit of Edward Locke, Sr.; Deposition of Edward Locke, Jr., pgs. 6-9.

Working the sobriety checkpoint the evening of June 23, 2007, among others, was Officer Timothy Walker of the Byrnes Mill Police Department and defendant Edward Locke, Jr. Affidavit of Timothy Walker; Affidavit of Edward Locke, Jr. Officer Locke, Jr. is the Police Chief of Bella Villa and a reserve police officer for Byrnes Mill. Affidavit of Locke, Jr.; Deposition of Locke, Jr., pg. 4. Police Chief Locke, Sr. was present at the sobriety checkpoint throughout its operation on June 23, 2007. Affidavit of Locke, Sr.

The parties differ significantly as to what occurred the evening of June 23, 2007. Officer Walker attests that he observed a car pull over to the side of the road shortly before it reached the

---

[4]The facts as set forth by the Court are largely derived from the defendants' statement of facts; the affidavits of Edward Locke, Sr., Edward Locke, Jr., and Timothy Walker, and deposition testimonies of plaintiff Hayes and defendant Locke, Jr. In opposition to the instant motion, the defendants' exhibits (plaintiff did not file any exhibits in support of his challenge to the defendants' summary judgment motion), and the defendants' statement of facts, the plaintiff admits to most of the facts stated; however, he vehemently objects/denies to any "material facts" which state that Officer Walker, and not defendant Locke, Jr., was the officer who made contact with the plaintiff; as well as whether that contact consisted of excessive force. Most of the plaintiff's objections/denials fail to create any genuinely disputed issues of fact germane to this case; e.g. whether the request for the sobriety checkpoint stated correct DUI statistics. However, the plaintiff's denials that Officer Walker was the police officer who made contact with him will be considered by the Court in its ultimate resolution of the pending summary judgment motion.

sobriety checkpoint. He further attests that he observed the driver and the passenger switch seats, then proceed to the checkpoint. Walker Affidavit. Plaintiff testified that he and his girlfriend, Carol Jesson, had gone to a movie earlier that evening, and he had consumed a large beer which he believed was equivalent to two (2) smaller beers. Plaintiff's Deposition, pg. 8. He further testified that about a mile from the checkpoint, he and his girlfriend switched seats so that she was the driver when they approached the checkpoint. Plaintiff's Deposition, pg. 14.

When the car reached the sobriety checkpoint, it was stopped. Officer Walker attests that he was the officer that spoke to the driver, plaintiff's girlfriend. Officer Walker further attests that because the occupants of the car had been observed switching drivers, he asked plaintiff why the switch of drivers. Plaintiff told Officer Walker that he was concerned about being stopped at the sobriety checkpoint driving because he had consumed a large beer earlier that evening. Officer Walker attests that he asked for the plaintiff's driver's license and proof of insurance, and further requested him to exit the car. Officer Walker attests that although the plaintiff was initially hesitant to exit the car, plaintiff did so without incident. Walker Affidavit. Upon detecting the odor of alcohol on plaintiff's breath, Officer Walker asked plaintiff to submit to a field sobriety test. Plaintiff cooperated, and passed the field sobriety test. Officer Walker then administered a preliminary breath test (PBT) to plaintiff. The results showed the presence of alcohol but not over the legal limit. Walker Affidavit. Officer Walker then informed plaintiff that he was free to go. Officer Walker attests that the entire detainment at the sobriety checkpoint took approximately fifteen (15) minutes . Walker Affidavit. Officer Walker attests that he had no physical contact with the plaintiff and the only interaction he had with him was to ask questions, and administer both the field sobriety test and the PBT. Walker Affidavit. Finally, Officer Walker attests that defendant Locke, Jr. had no contact whatsoever with plaintiff

the evening of June 23, 2007. He attests that defendant Locke, Jr. was stationed in the back of a converted ambulance administering the formal Breathalyzer test when needed. Walker Affidavit.

Defendant Locke, Jr. testified that he was stationed the entire evening of June 23, 2007 in the back of a converted ambulance performing the formal Breathalyzer tests on individuals brought to him by other officers, and also operating REJIS[5]. Locke, Jr. Affidavit; Locke, Jr. Deposition, pgs. 5-6, 10-11. He testified that other officers would sit individuals suspected of intoxication near the ambulance and observe them for approximately fifteen (15) minutes. Locke, Jr. Deposition, pg. 11. After that, the observing officer asks the individual "if they're willing to blow" and if so, the individual is brought to defendant Locke, Jr. for administration of the formal Breathalyzer test. Locke, Jr. Deposition, pg. 11. Defendant Locke, Jr. asks for the individual's name from the observing officer, types it into the Breathalyzer machine, and prints out the result (presumably after the individual blows into the tube hooked up to the machine). Locke, Jr. Deposition, pgs. 11, 25-26. He testified that he had no contact whatsoever with plaintiff or plaintiff's girlfriend the evening of June 23, 2007. Locke, Jr. Affidavit; Locke, Jr. Deposition, pgs. 16-17, 24-27.

Plaintiff testified that on the evening of June 23, 2007 it was defendant Locke, Jr. that approached him as he sat in the passenger side of the car detained at the sobriety checkpoint. He testified that he saw the name "Locke" on the name tag of the officer that approached him. Plaintiff's Deposition, pg. 13. Hayes further testified that defendant Locke, Jr. opened the car door, told him that he had been seen switching seats, and started to pull him out of the car. Hayes claims he then unbuckled his seatbelt and got out of the car whereupon Locke, Jr. grabbed

---

[5]REJIS is a computerized network utilized by various municipal police departments to run background checks on detained individuals; e.g. outstanding warrants for arrest issued in other municipalities.

7

his left arm. Plaintiff's Deposition, pgs. 16-17. Plaintiff claims that as they walked towards the testing area, he "politely" asked defendant Locke, Jr. to loosen his grip; however, defendant Locke, Jr. uttered an expletive and instead tighten his grip. Plaintiff's Deposition, pgs. 18-20. Plaintiff then claims that he (plaintiff) "kind of shrugged away" and that was when defendant Locke, Jr. "reached his right hand around the back of my neck with his fingers around the front of my neck". Plaintiff's Deposition, pg. 20. He further claims that defendant Locke, Jr. maintained this hold for "20, 30 seconds" while still maintaining a hold on his arm. Plaintiff's Deposition, pg. 22. Plaintiff further claims that he was "getting dizzy" at which point defendant Locke, Jr. "kind of sat me down on either the bed of a truck or on a chair." Plaintiff's Deposition, pg. 22. Plaintiff testified that the entire incident; i.e. defendant Locke, Jr. having his hands on the plaintiff, lasted "approximately 60 seconds". Plaintiff's Deposition, pg. 23.

Plaintiff next claims that he remained sitting for approximately five (5) minutes, then another officer came over to him and gave him a "breathalyzer test" by having him breathe into a tube. Plaintiff Deposition, pg. 24-25. Plaintiff then claims the unidentified officer immediately told him he was over the legal limit and plaintiff was returned to the place where he had been sitting earlier. Plaintiff's Deposition, pg. 25. Plaintiff next claims that Locke, Sr. came over to him and told him that although he was over the legal limit, he could leave. Plaintiff's Deposition, pgs. 25-26. Plaintiff claims that during this conversation Locke, Sr. told him that because he was trying to get away that was why "our officer" was gripping his arm. Plaintiff's Deposition, pg. 26. Plaintiff testified that he was detained at the sobriety checkpoint "15, 20 minutes I would say." Plaintiff's Deposition, pgs. 26-27.

Plaintiff testified that he asked other individuals who were also being detained whether they had seen the incident involving defendant Locke, Jr. and that none of them had witnessed

8

the incident. Plaintiff's Deposition, pg. 27. Plaintiff testified that there were "faint black and blue" marks on his neck and "some marks on his arm" that lasted "five to seven days". Plaintiff's Deposition, pg. 28. He further testified that these were his only injuries; however, he had "general pain" around the side of his neck for about three (3) weeks but that the pain went away. Plaintiff's Deposition, pgs. 33-34. Hayes testified that he suffered no permanent injuries, that he did not seek any medical attention regarding either the marks or the "general pain", that he did not miss any work, and that he did not incur any "out-of-pocket" expenses associated with the incident. Plaintiff's Deposition, pgs. 30, 32-33, 34.

Plaintiff was never ticketed, never handcuffed and taken to a police station, and never had any dealings with the court clerk of the City of Byrnes Mill regarding the stop at the sobriety checkpoint.

Plaintiff contends that defendant Locke, Jr.'s detainment of him at the sobriety checkpoint was an illegal arrest in violation of the Fourth Amendment because Locke, Jr. lacked probable cause for the detainment. Plaintiff further contends that in effectuating the arrest, Locke, Jr. used excessive force in violation of the Fourth Amendment. Plaintiff next contends that the municipalities are liable under a theory of *respondeat superior* for defendant Locke, Jr's actions. Finally, plaintiff contends that defendant Locke, Jr.'s actions constitute an assault & battery and false arrest under Missouri law.

Defendants first contend that this was never a situation involving an "arrest" but rather a "Terry stop" in connection with a valid sobriety checkpoint. Defendants further argue that only a "reasonable suspicion" that plaintiff had engaged in criminal behavior is required for a "Terry stop". They further contend defendant Locke, Jr. never had any contact whatsoever with plaintiff during the subject sobriety checkpoint stop. They contend that it was Officer Walker who had

9

contact with the plaintiff and that he never grabbed the plaintiff by the arm nor held him by the neck. Defendants further contend that even if it were Locke, Jr. involved in this incident, plaintiff's injuries are so minimal as to not rise to a constitutional violation and/or he is entitled to qualified immunity. They further contend that municipalities are not subject to *respondeat superior* liability under §1983. Finally, the defendants contend that the state law claims fail for a variety of reasons, including the fact that it was Officer Walker, and not defendant Locke, Jr. who had contact with the plaintiff during the relevant time-period.

### Count I - Claim for Fourth and Fourteenth Amendment Violations against Defendant Locke, Jr. - Unlawful Arrest

Plaintiff contends that defendant Locke, Jr. arrested him without probable cause. He asserts in his complaint that the arrest was without probable cause because plaintiff was not, among other things, committing a crime at the time, a safety threat, or resisting arrest. He further contends that the arrest was unlawful because it was made allegedly pursuant to probable cause arising outside the city limits of Byrnes Mill.

It is undisputed that the car occupied by Hayes was stopped at a sobriety checkpoint operated by the Byrnes Mill Police Department. Properly operated checkpoints are constitutional under the Fourth Amendment. Michigan Dept. of State Police v. Sitz, 496 U.S. 44 (1990); *see also*, U.S. v. Slater, 411 F.3d. 1003, 1005 (8th Cir. 2005)(stop of car at sobriety checkpoint and brief detention for sobriety testing not a Fourth Amendment violation). Plaintiff does not challenge the operation of the sobriety checkpoint or advance any argument that the sobriety checkpoint in and of itself was unconstitutional. Sobriety checkpoint stops such as the one operated on June 23, 2007 are considered to be a "seizure" under the Fourth Amendment. Sitz, 496 U.S. at 450; *see also*, Slater, at 1005. "For purposes of constitutional analysis, a traffic stop

10

is characterized as an investigative detention, rather than a custodial arrest. As such, a traffic stop is governed by the principles of *Terry v. Ohio* [392 U.S. 1 (1968)]". U.S. v. Jones, 269 F.3d. 919, 924 (8th Cir. 2001)(citations omitted); *see*, U.S. v. Wheat, 278 F.3d. 722, 727 (8th Cir. 2001)(when a law enforcement officer directs a motor vehicle to stop by side of road and detains the occupants briefly for questioning, such an investigatory stop constitutes a seizure under the Fourth Amendment and subject to a Terry review); U.S. v. Dolson, 673 F.Supp.2d. 842 (D.Minn. 2009). The minimal sobriety checkpoint stop on June 23, 2007 became a Terry stop once the car was stopped and plaintiff was asked to exit the car for questioning and sobriety testing. *See*, Slater, at 1006. Plaintiff's contention that he was subject to an "arrest" pursuant to the stopping of the car at the sobriety checkpoint is meritlesss.[6]

      Under Terry, an investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion that "criminal activity may be afoot". Terry v. Ohio, 392 U.S. at 30; U.S. v. Winters, 491 F.3d. 918, 921 (8th Cir. 2007); Wheat, at 727 (internal citations omitted). "`[T]he level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause ,' and `is considerably less than proof of wrongdoing by a preponderance of the evidence.'" Arrington v. City of Davenport, et. al., 240 F.Supp.2d. 984, 989 (S.D.Iowa 2003) *quoting* U.S. v. Sokolow, 490 U.S. 1, 7 (1989); *see*, Winters, at 921. Since "reasonable suspicion" is a less demanding standard than the probable cause required for an arrest, it "can arise from information that is less reliable than that required to show probable cause". Wheat, at 726 *quoting* Alabama v. White, 496 U.S. 325, 330 (1990). A police officer merely needs "some

---

[6]Furthermore, plaintiff's own testimony is that he was allowed to leave the sobriety checkpoint within 15-20 minutes of being stopped, was never ticketed, was never handcuffed, never taken to a police station, and never had any dealings with the Byrnes Mill municipal court further belies the notion that he was ever "arrested" on June 23, 2007.

minimal level of objective justification for making the stop." Arrington, at 989 *quoting* U.S. v. Sokolow, 490 U.S. at 7. "Police officers may rely on information from other officers in making a *Terry* stop." Arrington, at 990 *citing* U.S. v. Navarrete-Barron, 192 F.3d. 786, 790 (8th Cir. 1999).

Plaintiff speculates that no one could have seen him switch places with Ms. Jesson; however, he admits to doing just this prior to being stopped at the sobriety checkpoint. Officer Walker has attested that he did observe such a switch which gave him reasonable suspicion to believe that plaintiff was evading the checkpoint because he had been driving in violation of the law. Even if it were defendant Locke, Jr. who questioned the plaintiff and removed him from the car, plaintiff's own testimony is that Locke, Jr. did this based on information he had received from another officer that plaintiff had been observed switching places with Ms. Jesson prior to entering the sobriety checkpoint. Thus, Officer Walker and/or defendant Locke, Jr. had a reasonable suspicion that plaintiff had been engaging in criminal activity (driving while under the influence of alcohol) which gave rise to the switching of drivers in order to evade the sobriety checkpoint. Plaintiff's lengthy argument regarding the lack of probable cause is meritless.

Not only must an officer have a "reasonable suspicion" to stop the car, but the detention itself must be reasonable in order to constitute a permissible Terry stop. "Officers must use `the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose of the *Terry* stop." U.S. v. Newell, - F.3d. -, 2010 WL 696434, *2 (8th Cir. March 2, 2010) *quoting* Navarrete-Barron, at 790. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." U.S. v. Binion, 570 F.3d. 1034, 1040 (8th Cir. 2009). "To establish an unreasonably prolonged detention, the defendant **[in this case, plaintiff Hayes]**, must show that the officer

detained him beyond the amount of time otherwise justified by the purpose of the stop and did so without reasonable suspicion." U.S. v. Donnelly, 475 F.3d. 946, 951-52 (8th Cir. 2007).

Here, a constitutional sobriety checkpoint was set up. Plaintiff was observed switching drivers, a fact he admits. Plaintiff was asked for his identification and the reason for switching drivers. Alcohol was detected on his breath. Plaintiff admits to having the equivalent of two beers just prior to being stopped. Whether it was Officer Walker or defendant Locke, Jr., the initial contact with plaintiff was part of a reasonable investigation conducted pursuant to the traffic stop at the sobriety checkpoint.

Furthermore, by plaintiff's own testimony, he spent only fifteen to twenty minutes at the sobriety checkpoint. "Time is an important factor in distinguishing between an investigative stop and a *de facto* arrest . . . [and] a stop may be too long if it involves delay unnecessary to the legitimate investigation of the law enforcement officers." U.S. v. Bloomfeld, 40 F.3d. 910, 917 (8th Cir. 1994). Here, plaintiff and Ms. Jesson were asked questions relevant to a sobriety checkpoint traffic stop, plaintiff was tested for his blood alcohol level, then allowed to leave. Plaintiff offers nothing to indicate that there was any unnecessary delay in fulfilling the purpose for the stop or that fifteen to twenty minutes under these circumstances constituted a delay unnecessary to the legitimate investigation of the police officers. The Court concludes that the officer(s) acted reasonably and within the confines of a Terry stop when the plaintiff's car was stopped at the sobriety checkpoint and plaintiff was asked a limit number of questions and his alcohol blood level was tested, and released after a short amount of time. Brouhard, et. al. v. Lee, et. al., 125 F.3d. 656, 659-661 (8th Cir. 1997)(sobriety checkpoint reasonable under Fourth Amendment where there was minimal interference with individual liberty by limited questioning

and short detention period). Plaintiff's claim for unlawful arrest in violation of the Fourth Amendment fails.[7]

Having found that the plaintiff failed to meet his burden of proving that an issue of material fact exists regarding whether his Fourth Amendment right against unlawful arrest was violated, the Court finds no need to go any further with a qualified immunity inquiry. Cavataio v. City of Bella Villa, et. al., 570 F.3d. 1015, 1020 n.4 (8th Cir. 2009).

### Count I - Claim for Fourth and Fourteenth Amendment Violation
### Against Defendant Locke, Jr. - Excessive Force

Plaintiff contends that it was defendant Locke, Jr. who grabbed his arm and held him by the neck while escorting him to the Breathalyzer testing area at the sobriety checkpoint. He asserts that he suffered temporary faint black and blue marks, momentary temporary dizziness, and "general pain" in the neck area for about three (3) weeks with no lasting effects.

Defendants contend that on the evening of June 23, 2007 at the subject sobriety checkpoint, defendant Locke, Jr. had no contact whatsoever with plaintiff or Ms. Jesson. Defendant Locke, Jr. contends that he spent the evening in the back of a converted ambulance administering the formal Breathalyzer test and operating the computerized REJIS system, and

---

[7]Plaintiff also makes a vague assertion that his "arrest" was unlawful because he switched drivers prior to his car being stopped at the sobriety checkpoint, and that 1) it is his belief he could not have been observed; and 2) even if observed, he believes he was outside the city limits of Byrnes Mill. This assertion is meritless. Walker attests to observing plaintiff switch drivers to which plaintiff admits he did in fact do with Ms. Jesson. Furthermore, plaintiff admits in his response to driving through Byrnes Mill when he stopped the car, switched drivers, and then proceeded to the sobriety checkpoint.
> "Plaintiff went to the movies with his girlfriend, Carol Jesson, Defendant's Fact 10, admitted. He drank the equivalent of two beers, Defendant's Fact 11, admitted. He was driving home through Byrnes Mill and saw a sobriety checkpoint ahead, Defendant's Fact 12, admitted. He therefore pulled over and switched seats with his girlfriend, Defendant's Fact 12, admitted."

Plaintiff's Response [83], pg. 4.

that plaintiff was never brought to him for blood alcohol level testing. Defendants contend that the officer who had initial contact with the plaintiff on the evening in question, and who administered a field sobriety test and a PBT to plaintiff was Officer Timothy Walker, a non-party to this lawsuit. Furthermore, Officer Walker attests that he never had any physical contact with the plaintiff as described by the plaintiff.

Albeit the plaintiff's evidence of identification is factually weak and suspect (given his counsel's opening remarks), the Court finds that it is minimally sufficient to make the question of whether it was defendant Locke, Jr. who plaintiff encountered at the sobriety checkpoint a jury question. However, upon further analysis, even accepting (for purposes of the instant motion) that defendant Locke, Jr. had physical contact with the plaintiff at the sobriety checkpoint, the Court finds that plaintiff has failed to set forth a viable Fourth Amendment claim for excessive force.

The right to be free from excessive force in the course of an arrest, investigatory stop, or other "seizure" by law enforcement officials is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizure of the person. Graham v. Connor, 490 U.S. 386, 395 (1989); Mann v. Yarnell, 497 F.3d. 822, 825 (8th Cir. 2007) *citing* Guite v. Wright, 147 F.3d. 747, 750 (8th Cir. 1998)(citations omitted). Violation of this right may be redressed in a §1983 action. Mann, at 825; Crumley v. City of St. Paul, Minn., 324 F.3d. 1003, 1007 (8th Cir. 2003). Not every push or shove rises to the level of a constitutional violation. Samuelson v. City of Ulm, 455 F.3d. 871, 875 (8th Cir. 2006): Guite, at 750. Instead, the force employed by a law enforcement official is not considered excessive and a violation of the Fourth Amendment if such force was "objectively reasonable under the particular circumstances." Ngo v. Storlie, 495 F.3d. 597, 602 (8th Cir. 2007); Guite, at 750. "`Circumstances such as severity of

the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct.'" Littrell v. Franklin, 388 F.3d. 578, 583 (8th Cir. 2004)(internal citation omitted). The reasonableness of the officer's use of force is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Janis v. Biesheuvel, at 799 *quoting* Graham v. Connor, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Gill v. Maciejewski, 546 F.3d. 557, 562 (8th Cir. 2008) *quoting* Graham v. Connor, 490 U.S. at 396-97. "It is clear `the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" Cook v. City of Bella Villa, et. al., 582 F.3d. 840, 849 (8th Cir. 2009) *quoting* Graham v. Connor, *supra.*

"An `actual injury' must be shown to support an excessive force claim under the Fourth Amendment." Hanig v. Lee, 415 F.3d. 822, 824 (8th Cir. 2005) *citing* Dawkins v. Green, 50 F.3d. 532, 535 (8th Cir. 1995); *see also*, Mann, at 826 *citing* Crumley, at 1007 (a court may evaluate the extent of the plaintiff's injuries in determining the reasonableness of the force used). A plaintiff sustains actual injuries, for example, when s/he is bruised or has lacerations. Dawkins, at 535. The lack, or minor degree, of any injury sustained during an arrest is relevant in considering the reasonableness of the force used. Cook, at 850. "`[W]hile this court has stated `[i]t remains an open question in this circuit whether an excessive force claim requires some minimum level of injury,' a de minimus use of force or injury is insufficient to support a finding of a constitutional violation.'" Cavataio, at 1019-20 *quoting* Crumley, at 1007 (*quoting and*

*citing* Hunter v. Namanny, at 831); *see also*, Cook, at 850 (*quoting and citing* Hunter v. Namanny, *supra.*).

During the course of his detainment, plaintiff Hayes claims that defendant Locke, Jr. held him tightly by the arm, and upon plaintiff asking him to release him and then "shrugging away", defendant Locke, Jr. held him by the side of the neck[8]. Plaintiff further claims that the entire incident, grabbing hold of plaintiff's arm and neck, lasted no more than sixty (60) seconds. Finally, plaintiff testified that he suffered minor temporary bruising, and temporary "general pain" in the neck area. Plaintiff never sought medical care regarding any of these "injuries". There is no medical evidence establishing any significant injury sustained by the plaintiff and no permanent physical injury.

Viewing the facts in the light most favorable to Hayes, defendant Locke, Jr.'s actions during Hayes' detainment were objectively reasonable. Defendant Locke, Jr.'s de minimus use of force under these circumstances is insufficient to rise to the level of a Fourth Amendment violation. The Court has carefully reviewed the plaintiff's proffered caselaw and finds it inapplicable to the situation at hand. Plaintiff's cites two (2) Ninth Circuit cases[9] for the proposition that a police officer can be held accountable for excessive force when the officer's actions "causes a situation to spin out of control". Plaintiff's Response [83], pg. 8. Plaintiff fails

---

[8]Plaintiff continuously describes this maneuver as a "chokehold". Other than the inflammatory intent of such a label, there is no evidence that his type of maneuver is considered to be a "chokehold" in the world of martial arts, wrestling, mixed martial arts, etc. The Court will refrain from labeling the alleged physical contact as a "chokehold" and simply refer defendant Locke, Jr.'s actions as placing his thumb on the back of plaintiff's neck and his fingers wrapping around the front.

[9]Duran v. City of Maywood, 221 F.3d. 1127 (9th Cir. 2000) and Alexander v. City and County of San Francisco, 29 F.3d. 1355, 1366 (9th Cir. 1994). These cases involve police shootings.

to explain exactly how the situation with Hayes was "out of control", especially in light of plaintiff's *de minimus* injuries. Plaintiff's remaining cases all involve situations wherein the plaintiff was subject to objectively more force, such as being slammed to the concrete, kneed in the back while being handcuffed tightly, or several officers on top of the plaintiff while he is being handcuffed. Furthermore, in these cited cases, the plaintiffs had severe, and/or permanent injuries supported by medical evidence. *See*, Smith v. Kansas City, Missouri Police Department, et. al., 586 F.3d. 576 (8th Cir. 2009)(plaintiff was grabbed out of his home without warning, several officers struggled with plaintiff causing all of them to fall onto a concrete walkway, then plaintiff's face shoved into the concrete, and the officers' knees placed on his back while handcuffing him - plaintiff sustained severe injuries to his knees and face). Under the totality of circumstances, including Plaintiff's *de minimus* injuries, coupled with the short duration of time the force was applied, and the lack of any medical evidence establishing a physical injury as a result of the detainment supports this Court's conclusion that defendant Locke, Jr. did not use excessive force rising to the level of a Fourth Amendment violation. *See*, Cook, at 849-52; Cavataio, at 1019-20.

Having found that the plaintiff failed to meet his burden of proving that an issue of material fact exists regarding whether his Fourth Amendment right against excessive force was violated, the Court finds no need to go any further with a qualified immunity inquiry. *See*, Cook, at 851 (internal citations omitted).

## Count IV - *Respondeat Superior*

Plaintiff's claim against defendant Byrnes Mill (and presumably also the City of Bella Villa since Count IV makes no distinction between the two municipalities as to liability) is based upon the doctrine of *respondeat superior*. It is well-established that municipalities are not

subject to *respondeat superior* liability under §1983. Monell v. New York City Department of Social Services, 436 U.S. 658, 694 (1978). Plaintiff's claim against defendant(s) City of Byrnes Mill and/or City of Bella Villa based upon *respondeat superior* fails as a matter of law.

### Count V - State Law Claims for Assault & Battery, and False Arrest

Without addressing the adequacy of these potential claims, the Court will decline to exercise jurisdiction over them. A federal district court has discretion to decline jurisdiction if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. §1376(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine - judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims." Barstad v. Murray County, 420 F.3d. 880, 888 (8th Cir. 2005) *quoting* Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988). Upon a determination that defendants are entitled to summary judgment on the plaintiff's §1983 federal claims, the Court believes that the appropriate state court is a better forum to adjudicate plaintiff's attendant state law claims. The Court will dismiss plaintiff's state law claims, as contained in Count V, without prejudice.

In light of the above findings of fact and conclusions of law, this Court determines that no material issues of fact exist and that plaintiff has failed to make a submissible case, as a matter of law, regarding his detainment at the sobriety checkpoint of June 23, 2007 and the use of force incident to that detainment. Defendants are entitled to summary judgment as a matter of law on plaintiff's §1983 claims, including his *respondeat superior* claim. Plaintiff's state-law claims will be dismissed without prejudice.

Dated this   13th   day of April, 2010.

                                                                                             UNITED STATES DISTRICT JUDGE